UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE SUBPOENA TO                                  CIVIL ACTION (MISC.)
KENNETH L. BECKMAN                                 NUMBER 14-38-JJB-EWD


UNDERLYING ACTION
UNITED STATES OF AMERICA
VERSUS                                             CIVIL ACTION
                                                   NUMBER 11-803-JJB-EWD
9.345 ACRES OF LAND, MORE
OR LESS, SITUATED IN IBERVILLE
PARISH, STATE OF LOUISIANA, ET AL.


**RULING ON MOTION TO QUASH OR MODIFY IN PART A. WILBERT'S SONS,
LLC'S SUBPOENA TO KENNETH L. BECKMAN**

Before the court is the Motion to Quash or Modify in Part A. Wilbert's Sons, LLC's

Subpoena to Kenneth L. Beckman (the "Motion to Quash," R. Doc. 1) filed by the United States.

The Motion to Quash is opposed by A. Wilbert's Sons, LLC, members of the Wilbert Mineral

Group, and the Adams Royalty Group ("Defendants"), and the United States has filed a reply.[1]

For the reasons set forth herein, the Motion to Quash is GRANTED.

I.      **Background**

On August 27, 2013, Defendants issued a subpoena to Kenneth L. Beckman ("Beckman")

to produce documents.[2]  Thereafter, the United States filed the instant Motion to Quash, asserting

that the documents sought via the subpoena are protected attorney work product and trial

preparation material.  In response, Defendants assert that any privilege regarding the requested

documents has been waived.

---

[1] *See*, R. Docs. 7 and 9.

[2] R. Doc. 1-4.

The underlying suit giving rise to Defendants' subpoena is a federal condemnation action, *United States of America v. 9.345 Acres of Land, More or Less, Situated in Iberville Parish, State of Louisiana, et al.*, No. 11-803-JJB-EWD, United States District Court, Middle District of Louisiana (the "Underlying Action"). In the Underlying Action, the United States designated Mr. Beckman as an expert. Thereafter, Plaintiff moved this court for Modification of the Amended Scheduling Order (the "Motion to Modify Scheduling Order").[3] As good cause to amend the scheduling order, the United States asserted that Mr. Beckman could no longer serve as an expert witness for it due to a previously undisclosed confidential relationship with one of the principal defendants in the suit, Boardwalk Louisiana Midstream, LLC (f/k/a PL Midstream, LLC).[4] In support of the Motion to Modify Scheduling Order, the United States submitted the declaration of one of its attorneys, Michael Krainak, purporting to set out a timeline of its retention of Mr. Beckman and its discovery of Beckman's conflict of interest (the "Krainak Declaration").[5]

In addition to opposing the Motion to Modify Scheduling Order, Defendants filed a Motion to Compel the Deposition of Michael J. Krainak and to Discover Records and Communications of the United States with Regard to Kenneth L. Beckman, International Gas Consultants, and Geostock U.S., LLC (the "Motion to Compel") in the Underlying Action.[6] The purpose of Defendants' Motion to Compel was to obtain discovery regarding the Krainak Declaration and the assertions raised in Plaintiff's Motion to Modify Scheduling Order.[7] The same month Defendants

---

[3] Underlying Action, R. Doc. 145.

[4] Underlying Action, R. Doc. 145-1, p. 1.

[5] Underlying Action, R. Doc. 145-2. This Declaration was also attached to Defendants' subpoena.

[6] Underlying Action, R. Doc. 157.

[7] *See*, Underlying Action, R. Doc. 151, p 2 ("Defendants will shortly file a Motion asking the Court to allow them to conduct discovery, including depositions, to obtain direct testimony regarding the unfounded assertions raised in Plaintiff's Motion [to Modify Scheduling Order]."); Underlying Action, R. Doc. 157-1, p. 6 ("By seeking an alteration of this Court's scheduling order and resetting expert deadlines to allow it to redo its expert discovery, the United States wants to alter this entire case…This extreme requests relies almost entirely on the alleged communications between

filed the Motion to Compel in the Underlying Action, they also issued the subpoena to Mr. Beckman forming the basis of the instant Motion to Quash.

On March 23, 2015, this court denied the United States' Motion to Modify Scheduling Order.[8]  Therein, this court found that the "available information supports a finding that the plaintiff knew when it retained [Beckman] that he had a conflict of interest which may precluded (sic) him from serving as one of the plaintiff's experts, but nonetheless made a strategic choice to retain him."[9]  The district court subsequently affirmed the denial of the Motion to Modify Scheduling Order.[10]  Thereafter, this court denied Defendants' Motion to Compel as moot "[b]ecause the purpose of taking Krainak's deposition was to discover information that would be relevant to the plaintiff's motion to modify the scheduling order, and since that motion was denied and the denial was affirmed by the district judge, there is no longer a purpose to depose Krainak."[11]

## II.    Analysis

### a.  Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

---

counsel for Plaintiff (Mr. Krainak), Mr. Beckman, and Geostock, and the 'new opinions' allegedly held by Geostock. Notably, the United States has intentionally put these communications at issue in the declaration submitted by Mr. Krainak and the memo.").

[8] Underlying Action, R. Doc. 273.

[9] Underlying Action, R. Doc. 273, pp. 1-2.

[10] Underlying Action, R. Doc. 301.

[11] Underlying Action, R. Doc. 303, p. 2.

expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).[12]

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  On timely motion, the court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery.  Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  *See also*, Fed. R. Civ. P. 26(b)(4)(C) ("Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communication, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify the assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.").  The work product privilege "is not absolute, however….opinion work may be disclosed when the holder waives the protection

---

[12] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery.  The 2015 amendments "restor[e] the proportionality factors to their original place in defining the scope of discovery."  Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015).  "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending."  *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, ---F.R.D. ---, 2015 WL 7771078, at *5 (N.D. Tex. 12/3/15).  Given the "restorative nature" of the amendments, the court finds that application of the amended version of Rule 26(b)(1) is "both just and practicable."  *See*, *Williams v. U.S. Environmental Services, LLC*, 2016 WL 684607, at n. 2 (M.D. La. 2/18/16).

by placing the protected material 'at issue' in the litigation." *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29451, at *7 (M.D. La. 1/1/14), citing *Conoco Inc. v. Boh Bros. Const. Co.*, 191 FRD 107, 118 (W.D. La. 1998).  "The party seeking discovery of opinion work must show a compelling need for the information and an inability to obtain it otherwise." *Id*. Fed. R. Civ. P. 26(b)(3)(A)(ii).

### b.  The Subpoena to Mr. Beckman

The subpoena issued to Mr. Beckman makes 14 requests for documents.  Request 1 asks Mr. Beckman produce any documents in any way related to the Krainak Declaration.[13]  Requests 2 through 5 ask for all documents provided by or to the United States to Mr. Beckman in any way related the Underlying Action, the United States' retention of Mr. Beckman, or work performed by Mr. Beckman for the United States or PL Midstream, LLC.[14]  Request 6 asks for all raw data gathered by Mr. Beckman at the request of Plaintiff.[15]  Request 7 asks for any contracts and/or engagement agreements entered into between Plaintiff and Mr. Beckman.[16]  Request 8 asks for any contracts and/or engagement agreements entered into between the United States and Mr. Beckman.[17]  Request 9 asks for any reports prepared by Mr. Beckman for the United States, while Requests 10 and 11 ask for all drafts and mark-ups of those reports.[18]  Request 12 asks for all communications between Mr. Beckman and the United States that are in any way related to the Underlying Action or Mr. Beckman's retention by or work for Plaintiff.[19]  Request 13 asks for all

---

[13] R. Doc. 1-4.

[14] R. Doc. 1-4.

[15] R. Doc. 1-4.

[16] R. Doc. 1-4.  The United States does not seek to quash Request 8.  R. Doc. 1, p. 8.

[17] R. Doc. 1-4.

[18] R. Doc. 1-4.

[19] R. Doc. 1-4.

communications between Mr. Beckman and the United States in any way related to Mr. Beckman's retention by and work for PL Midstream, LLC.[20]  Finally, Request 14 asks for all communications with any other person or entity that in any way relate to the work performed by Mr. Beckman for the United States.[21]

Defendants make clear in their Opposition to the Motion to Quash that the issues "inherent in Plaintiff's Motion to Quash" have been analyzed and briefed in the context of Defendants' Motion to Compel.[22]  Defendants assert that "Plaintiff based its request to modify the scheduling order, and consequently the entire course of this litigation, on those communications between Mr. Krainak and Mr. Beckman, and other communications between Mr. Krainak and Geostock, including reports from Geostock.  Given Plaintiff's reliance on these communications and reports, Defendants are entitled to perform discovery regarding facts alleged in the Declaration and the Motion [to Modify Scheduling Order]."[23]  In support of its subpoena to Geostock, Defendants argue they "cannot effectively rebut the representations made in the Declaration without being allowed to review the files, records, and communications between the expert witnesses and Plaintiff...."[24]

---

[20] R. Doc. 1-4.

[21] R. Doc. 1-4.

[22] R. Doc. 7, p. 1.

[23] R. Doc. 7, p. 3.

[24] R. Doc. 7, p. 12.  *See also*, R. Doc. 7, p. 4 ("In response to Plaintiff's Motion for Modification of Amended Scheduling Order, Defendants filed a Motion to obtain relevant discovery from Mr. Beckman and Plaintiff's counsel and subsequently filed a Motion to Compel the deposition of Plaintiff's counsel....[O]n or about August 27, 2013, Defendants issued a Subpoena to Testify at a Deposition in a Civil Action to Mr. Beckman....Defendants also issued to Mr. Beckman a Subpoena to Produce Documents, Information, or Objects to Permit Inspection of Premises in a Civil Action."); p. 11 ("Defendants assert that the recent actions involving Plaintiff, Mr. Beckman, and Geostock, including Plaintiff's request for a 'do over' regarding its experts, warrant Defendants' request to obtain the requested documents.  Otherwise, Defendants lack the means to obtain all relevant information underlying the Declaration and Plaintiff's involvement with Mr. Beckman.").

To the extent Defendants' subpoena to Mr. Beckman asks for documents and communications on the subject matter of Mr. Beckman's conflict of interest and the United States' knowledge of that conflict, the court finds that such documents and communications were put "at issue" by the United States' Motion to Modify Scheduling Order and the supporting Krainak Declaration.   However, because the Motion to Modify Scheduling Order has been denied, Defendants can no longer assert that there is a compelling need for this information.   Just as this court previously found that Defendants' Motion to Compel was rendered moot by the denial of the Motion to Modify Scheduling Order, so too was Defendants' subpoena to Mr. Beckman.   To the extent Defendants' subpoena seeks privileged documents and communications that are relevant to issues other than Mr. Beckman's conflict of interest and the United States' knowledge thereof, no waiver of privilege attached to those documents has occurred.

## III.    Conclusion

For the reasons set forth herein, the Motion to Quash (R. Doc. 1) is GRANTED.

Signed in Baton Rouge, Louisiana, on April 5, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**